Our next case will be Commission Ejecutivavs, I'm going to leave it at that, versus NPC. I'm going to leave it at that as well, Your Honor. Good morning. I'm Joy Soloway. I'm here for the appellant NEJAPAPower Company. I would request five minutes to reserve for rebuttal. You may. And we gave you an additional five minutes so that you could discuss the mootness issue. And we very much appreciate that. That's why you have 20 minutes instead of the other, and you request for a five minute rebuttal to be granted. Thank you. Of course, if you want to go shorter, we never, you know, we don't like a scant at that. We'll never object. If I can give any time back, I will, I promise. Your Honor, good morning. NPC was the defendant below in this case, and we are the claimant in an international private arbitration that is controlled by Swiss procedural law. And you're the appellant. You're the one who's also saying the case is moot. Why don't you just withdraw the appeal? Well, Your Honor, if we withdrew the appeal, then we would still be facing the district court's order, which compels discovery. Right. So you want us to say it's moot so that the district court's order will be vacated, correct? Correct. Under the Greater Sugar case, the U.S. Supreme Court case, which we cited in our brief, that would be the procedural reference that we were asking for. And you've gotten all this delay in not providing the discovery by virtue of your appeal and the district court's stay. Really, what's changed to make this moot? Well, the whole idea of 1782 and the statutory prerequisite is that the applicant is seeking discovery for use in a proceeding. So it's discovery that's going to be used in a proceeding. That has not taken place. The statute is forward-looking, in other words. Here, in our case, the proceeding that the discovery was requested for is now behind us. It's not over yet. I mean, there's no decision that's been made, has there? You're correct, Your Honor. There has been no decision. And couldn't the arbitrator reopen this at any time, either before or after the award? My opponent has made that argument, and we disagree with that proposition. Why? If you look at the Second Circuit case, the Esherick case, and I may be pronouncing that incorrectly, we're in the same exact posture as that case, post-hearing, pre-decision. And the court said that where the affilee in that case wanted to speculate that there might be a reopening of evidence, that was insufficient. Plus, in our case, the arbitrator and tribuner had said all along that it was going to hold both parties to the schedule. And that schedule required that the parties conduct discovery between the two submission dates and present their evidence with their written submissions. The final due date for Sell's submission was April 1. April 1 has come, and it has gone. That's all true, but now the proceedings are continuing in the Swiss court. Now, the Swiss court, I think the appellee's position is it's still going on. Even though this would be closed as of July, the Swiss court is a continuation of the arbitration proceedings. You want to call it a Swiss court or a Swiss tribunal? Well, I think it would be a Swiss tribunal because it is a governmental organization. Well, Your Honor, right now there is only a proceeding before an arbitration. Sell has taken the position that even if the arbitration proceeding is closed, as you point out, there might be another proceeding. Well, we return to the Second Circuit case. This application for discovery was brought for use for discovery in the arbitration, not in the revision. And if there is a revision, that is not before the arbitrators. It is before a totally separate entity. It is before a court. But that's the second one, right? That would be post-decision. That's correct. And we're really putting the cart before the horse here because we don't have an award. And as their own expert said, the whole revision proceeding would be if Sell wanted to make the argument that evidence that they could have presented to the tribunal was not available, and now it is available, and it is important and material to the award because it would change the underlying facts. Well, without an award, we don't know whether this decision is going to turn on a legal point, which it very may well, such as the argument of res judicata, or it can turn on another legal point that the tribunal has decided to just examine and decide what the contract says within its four corners and not consider extrinsic evidence. So again, we're in the realm of speculation when we're looking to a possible revision, which is very, very rare. But again, we go back to our main point that Sell sought this application for discovery in use before an arbitration. The arbitration has come and gone. And Sell could have tried to at least alleviate the situation by objecting to this proceeding that started on April 27th and going forward. It didn't. It never said to the arbitrator tribunal, wait, we still have our 1782 action pending. Please do not close the evidence. There's no application before the arbitration panel to forego or put off the award or decision until something else occurs first? Quite the opposite. There's nothing pending for the arbitrator? No. In fact, Sell told the arbitration panel at the end of the arbitration that it was happy with the way that the proceedings had been conducted. When the panel said that the evidence is now closed, Sell did not object. It did not say, please wait until the Third Circuit decides our case or the Fifth Circuit decides our case. The arbitrators at the end of the proceeding invited the parties to submit post-submission briefings. The arbitrators also told both parties, do not submit any new evidence. Instead, just distill the hearing for us, what you think is important, and keep it brief. And actually, didn't they give you an actual sort of timetable that they expect the decision to come out? Yes. And that would be July? Yes. They said that they would work to have it to us before July. Post-submission briefing is due next week. And again, the panel said to both parties, no new evidence. Sell did not raise its hand and said, wait a minute, we still have that evidence out there in that 1782 proceeding. It never said anything. In fact, at the beginning of the arbitration hearing, we brought this forward in our papers, Sell asked the court, the tribunal, to enforce that timetable so that Nahapa could not introduce any new evidence. There was some disagreement about whether a witness's testimony from the second arbitration can be used in the third arbitration. And Sell said, well, that's new evidence. It wasn't attached to your submission, Nahapa, so you can't use it. So Sell used the schedule from this arbitration panel as a sword against Nahapa to close the book on available evidence. Now it's still saying that this appeal is not moot. If it had at least objected and said to the tribunal, please don't close the evidence, please reconsider the evidence, or please consider reopening the evidence once our appeal in the Third Circuit is concluded, then I would understand their argument. They have cited to this court a New York District Court case, the Grupo case, where there was a proceeding that was taking place in a Mexican court, and the same mootness problem came to light in that the proceeding was completed and then the appeal had not been exhausted then. I'm sorry, it was still in the District Court. And the District Court said, well, since the applicant has asked the Mexican court to keep the evidence open and has brought forward evidence that the Mexican court might be willing to keep the evidence open, then we will not say that this is moot. Well, but Selle chose not to do that. Now it may have been a strategy decision. We were talking about that in one of the earlier cases. Sometimes you decide not to get the court mad at you, and perhaps Selle didn't want the arbitrators to be mad at it, and so therefore it forwent the objection. Well, without making that objection and agreeing, let me emphasize that it agreed at the end of the arbitral process, it was happy with the way the proceeding had been conducted. We would very much insist that this case is held. Yeah, but their position could change if the award doesn't go in their favor, and then you could end up back where we are. Well, no, Your Honor. If the award doesn't go in their favor, first of all, it's a question of in what context. What is the substance of the award? If the award is decided on a legal basis, we're certainly not going to be back here. If it's decided on a basis of no damages or whatever, then we're not going to be back here. But my point, again, is if Selle needs that evidence. I guess my point is that there's the possibility, based on the outcome of the final award, that on the evidence that they're seeking to get through this discovery, that there could be a motion before the court reviewing the arbitration award wherever, in Switzerland, that there is newly discovered evidence. And that newly discovered evidence could lead to a reopening of the arbitration. If we are back here in that context, I would submit that the proper procedure for Selle would be to file a new Section 1782 application. That's what your argument would be. All right, why don't we get, since your time is rolling, why don't we get to the merits. You tell us why you don't think that 1782 applies to this tribunal. It seems like it's foreign. It very much does seem like it's foreign. You're not going to dispute that. No, we don't dispute that it's foreign. It's certainly not domestic. It's certainly not domestic. Why isn't it a tribunal? It is not a tribunal because when you look at the amendment that took place in 1964, and you look at Intel, and you look at the contemporaneous literature that occurred, and you look at the legislative history, for it to be a tribunal within the meaning of 1782, it must be government-sponsored. It must be intergovernmental. It must have a government flavor to it. Since the Intel decision in 2004, hasn't practically everyone who's looked at this issue involving 1782 disagreed with you and concluded that this does apply to private tribunals? No, Your Honor. We would disagree with that. There have been four district courts which have disagreed with us. Okay. One of them is this court here. The Texas court has agreed. And they were, of course, they were forced to follow. They were required to follow the Biedermann decision, were they not? They were compelled to look to Fifth Circuit precedent, but Judge Harman also did look at Intel and looked at the arguments to see whether there was an intervening U.S. Supreme Court decision which would affect Biedermann, and Judge Harman concluded that it would not. Also, the New Jersey district court in the Oxus Gold case said what we believe is the rule of law here, and that is that Biedermann and B.C. and Intel are all completely compatible with one another. In the Oxus Gold case, it was a private arbitration, but it was compelled by a treaty, so it had the government flavor to it that this tribunal does not. This tribunal is purely a creature of contract. It only exists because these parties chose to be in arbitration, and they made that decision willfully and purposefully, and they decided to be controlled by the unsuitable rules. They made a tradeoff. As this court has said, the hallmark of arbitration is limited discovery. I agree with everything you said, that this is a creature of the contract, and it's not a government as such, but why isn't an arbitration proceeding a tribunal of sorts? As a matter of fact, the literature tells us that arbitration proceedings resolve more disputes than courts do now. Unfortunately for the lawyers, that's a fact. I agree. So why isn't an arbitration constituted under a private contract within the meaning of tribunal in 1782? Your Honor, I'm Particularly with Intel setting a standard of the first instance decision maker. I mean, I think your adversary points that out. Yes. If I could answer Judge Cowen's question first, and then I promise to get to yours. You're right, that if you just look at the word tribunal in a vacuum, an arbitral tribunal, we're even calling it a tribunal. So obviously, it is a tribunal of sorts, but that doesn't answer the question of whether it is a tribunal for purposes of 1782. Well, where do we look? Do we go to the dictionary? Do we go to a Swiss dictionary or American dictionary? No. I think you can even look to Intel, and you look to the legislative history. And what the Congress was trying to do was move away from conventional courts because a tribunal can have a government flavor, be sponsored by a government such as the DG competition in Intel, and be then within 1782. But a tribunal, as the Second Circuit points out, is a word that kind of has no boundaries. A Girl Scout meeting could be a tribunal. People who judge an ice skating competition could be a tribunal. The word tribunal is very porous, and so to make sure that it has meaning within Section 1782, we must define it. And Intel did that. If tribunal meant anything that caused itself a tribunal, then the Supreme Court decision would have really been no decision. There was no reason to do any statutory construction. But Intel looked to the legislative history and said that Congress meant to move beyond conventional courts. Congress talked about quasi-administrative proceedings, quasi-judicial investigative authorities. Why isn't an arbitration a quasi-judicial proceeding? It's when people opt out of the court system and say, I don't want to have full-blown discovery. I want to be, as Judge Harmon said, in this parallel universe. I don't want to be controlled by what the court has to say. I am trading off the law, the Third Circuit, the Fifth Circuit, and I want a private, streamlined resolution. But aren't you necessarily, even in arbitration, tied to a government? Because once an award is made, if the losing party doesn't pay, you've got to go to court to reduce the award to judgment. Yes, you can reduce the award to judgment and you can enforce the award in various jurisdictions, but there is no merits review. If you look at the CPL that we have furnished to the court, which is the Swiss law governing international arbitrations, review is limited, extraordinarily narrow, just like you all are familiar with the FAA. It's limited to jurisdictional issues, impartiality issues, those kinds of issues. There's no determination, second guessing the arbitrators whether they got the law right or the facts right. If I could quickly answer your question about the first instance decision maker, would you like me to wait for rebuttal, because I see I'm out of time. Whatever you want to do. I'd like to hear it. Go ahead. Intel did not hold that every first instance decision maker is a tribunal. In fact, it was careful to note that only when the DG competition was acting as a first instance decision maker was it a tribunal. There are other aspects to the DG competition's obligations under the treaty, and those functions would not be as a tribunal. The import of the discussion in Intel about the DG competition was that it was part of a paradigm for the court system. The arm of the treaty was to enforce the antitrust laws for the European treaty. So that's why, again, it has the government sponsorship that is so lacking in our case. And we are not, the arbitration panel in our case is not a first instance decision maker, because, again, there will be no merits review. Well, in this case, can't a Swiss court review? No, Your Honor. If you look at 190 of the CPIL, it's not reviewing the award. You can challenge the award on very narrow grounds, such as that the arbitrators didn't have jurisdiction. That's not review of the merits of the determination. No Swiss court will ever come in and decide whether these arbitrators got it right. Okay. We'll have you back on rebuttals. Mr. Orta? Good morning, Your Honors. May it please the court, David Orta on behalf of CEL. And, Mr. Orta, why don't you start with the moot in this issue? Yes, Your Honor. It is Appellee's contention that this case is not moot. There is still a live controversy, as I think was raised by some of the questions made to counsel for the appellant. There is no arbitral award that has been issued in this case. The evidence is closed. The arbitration panel has made it very clear that they will not receive any more evidence, and an award is going to be made as of July. How can you argue that there's a proceeding going on when all we're waiting for is an award? Judge Cowen, the arbitral tribunal has, in fact, we have celebrated the hearing. They have closed the evidence pursuant to Article 29.1 of the Institutional Rules, but under Article 29.2 of the Institutional Rules, my client has the ability to petition the tribunal to reopen the hearing if additional evidence comes to light that we think could potentially impact the decision. You have no such motion or petition pending. As a matter of fact, you were inviting the award yourself. There is no such motion or petition pending because there is no evidence that we have yet that would ground such a petition. That is what we're seeking through the underlying action in the Delaware District Court. That's what the Delaware District Court ordered, and if this appeal affirms the decision of the Delaware District Court, that's what we would be seeking in the Delaware District Court. Point being on the issue of mootness, there is still an ability, it's no question, for us to use evidence that we would obtain through the 1782 proceeding in the underlying arbitration. Well, isn't that sort of speculative and a conjecture? We're dealing here with real-life litigation, of course, and given the hostility that even the arbitration panel has shown to this discovery in the United States federal court, why is it inappropriate for us to say that as a practical matter this thing is moot? Judge Cowen, if you look carefully at Procedural Order Number 3 issued by the tribunal, my opponent likes to quote certain portions of it to say that the arbitral tribunal is hostile to the evidence, would not consider the evidence, but if you look carefully at Procedural Order 3, you will see that the arbitral tribunal said that it would consider evidence obtained through the Delaware and Texas 1782 proceedings. Now, it retained the discretion to say whether such evidence would be admissible or not, but it never said that it wouldn't consider it. And more importantly, the appellant in this case on several occasions asked the tribunal to enjoin us from continuing those proceedings. The tribunal never did that. They refused to do that. So in response to your question – Do they have the power to do that, though? Well, we argued that they didn't. They never said one way or the other. We don't believe they had the jurisdiction to do that. But nonetheless, they did say in their order that, and they left open, that they would consider potentially any evidence that we would obtain through the 1782 proceedings in Texas and here in Delaware. Would you concede that as of July, if the award comes down by July, then it's moot at that time, or would you not concede that? Judge Cowen, we would not concede that because, as we pointed out in our papers, we have the ability, pursuant to the Swiss procedural law here, to petition the Swiss Federal Tribunal for a revision of an adverse award. And that, one of the specific grounds for seeking a revision is new evidence, which comes to light, which could have impacted the award. Well, yeah, but if you went to a Swiss court, which I don't think anyone would deny, at that point you're in a tribunal. We'll get to the tribunal issue later on. But if you went to the Swiss court after the award was made, wouldn't you have to make another 1782 application because you're no longer in arbitration? No. I mean, it's our position that we would not have to make another 1782. How could you say no? You're no longer before an arbitration panel. You would have to go and make a new application because you're in a different tribunal, if the arbitration is a tribunal. I have two responses to that, Judge Cowen. First, it is a continuation of the original proceeding in the sense that all that the revision proceeding seeks is an order from the Swiss Federal Tribunal to reopen the underlying proceeding and allow that tribunal to consider the new evidence. And that's exactly what we would be seeking through a revision proceeding. And as noted by Dr. Gabrielle Nader-Bas, who is the Swiss law expert that we submitted, whose letter of opinion we submitted, she says it's a continuation of the underlying proceeding. Well, if you go to the Swiss court, though, they're not going to decide this case. If there were any possibility that additional evidence would be used, they would remand it, I take it, back to the arbitration proceeding. But the arbitrator, I'm not too sure a Swiss court has the ability to do that since you bargained through the contract for an arbitration. You didn't bargain for anything other than that. You got an arbitration award, whatever the award is. The Swiss Federal Tribunal is empowered to order the arbitral tribunal to reopen its proceedings and consider the new evidence. That is exactly the purpose of a revision proceeding under Swiss procedural law. And that is why we say that even if an award were issued and it were unfavorable to our client, we would have the ability if we were to obtain new evidence pursuant to the 1782 proceeding to petition the Swiss Federal Tribunal to, in light of that evidence, request the tribunal to reopen the proceedings and consider that evidence and render a new decision. So that even after the award is made in July, if it be made in July, you say it's still not moved at that point since you'll be in the Swiss court at that point if the award is not favorable to your interest? Yes, sir. Is that a continuation of the first proceeding or is that a second proceeding? It is our position that under Swiss law that is a continuation of the first proceeding because the Swiss Federal Tribunal doesn't look at the evidence, the new evidence, and determine and basically make a decision on the merits. It simply makes a determination as to whether that evidence is new and, if new, whether it could have affected the decision of the tribunal. And if the answer to those questions is yes, it can then remand back to the arbitral tribunal, order them to reopen the hearing and the proceedings, and to consider that evidence. Mr. Ortega, your use of the word reopen leads me to conclude that the proceeding that you were focusing on was over. And it seems to me that 1782 focuses fairly directly, and, in fact, the strict reading of the section, it talks about a proceeding. I guess my concern is that if you don't have a proceeding, which I don't know that one remains because you're talking about reopening it, if you have to reopen it, I mean, it means to me it's closed. If you don't have a proceeding, you then can't use 1782 because otherwise, instead of having collateral discovery, which I think the Congress was permitting by adopting 1782, you would have a whole separate vehicle to go out and to be looking for evidence to either start a proceeding or, in using your terms, reopen a proceeding or to begin anew in some foreign venue, which couldn't have been the intent of Congress when they passed this statute. You may. Thank you, Judge. Let me draw a distinction between what we're arguing and one of your examples, which is start a brand-new proceeding. We're not talking about starting a brand-new proceeding here. We're talking about a petition to the Swiss Federal Tribunal to open or to require the arbitral tribunal, basically, to hear this new evidence and issue a new award, whether it's reopened or opened. Even your answer, I think, concurs with what I'm pointing to as something that is absent here at this time, at this current time, real time, which relates to the mootness issue, is that you don't have an ongoing proceeding right now. At this time, we do. There is no award that's been issued. But it's closed. Well, the evidentiary record is closed. That doesn't mean the proceeding is closed. In fact, we have no ruling from the arbitral tribunal. And as we pointed out in our papers, under 29.1 of the Incitrall – 29.2, pardon, of the Incitrall rules, we can request the arbitral tribunal to reopen the hearing, not the proceeding, the hearing, in order to consider the new evidence. That's before the award is issued. You also said in answer to Judge Cowen's question, if you were here and it was July 2nd and the award had already been handed down July 1st, your position would be the same. Correct, because even after the award is issued, we still have the ability pursuant to the Swiss Federal Tribunal rules to request that the Swiss Federal Tribunal order the arbitral tribunal to consider the new evidence. That's why we say it's a continuation of the same proceeding and issue a new award in light of that new evidence. I would point out – Does this make any sense, though? I mean, when is the thing final? Can you always then go use Section 1782? And, you know, if you – let's say you relax and do a discovery or didn't even ask for any during your arbitration, then you use this and you're starting from the beginning again. I mean, how does that serve the purposes of finality? I mean, you have an awfully broad reading here. The facts in this case are that we started our 1782 proceeding back in July of last year. The only reason that we're still here today and we don't have our evidence, even though it was ordered by the district court, is that the opposing side, as it is allowed to do, has appealed and objected at every juncture to prevent us from getting that evidence. That's the only reason we don't have that evidence today, notwithstanding that it was ordered by the district court judge. We're not talking in this case about, you know, a case where several years down the road we're looking to reopen or to require a tribunal to look at new evidence. But you could have heard – if that evidence which you don't have yet but which you must think is there, if you thought that was so important, why didn't you go and try to delay the arbitration pending the decision here in our court? Your Honor, the tribunal made it very clear that it did not want to entertain any motions for delay. But you didn't – you still didn't make one. We did not because the tribunal made it clear that it didn't want to entertain any such motions, and we made a decision not to do so in light of that directive from the tribunal. I think we understand your position. You've called the arbitration a tribunal. Let's get on that for a second. Let's get there. Let's move to that. I looked through the four or five dictionaries we've got floating around my office, including the new – one is so heavy I can't even lift it. And tribunals got like two pages to define tribunal. And every entry in that dictionary, the New International Webster's, now I remember, had a flavor of government of some sort. As a matter of fact, the word originally comes from the Roman word tribunus, or tribunus, who was the Roman officer in occupied lands who dispensed law. And he was a government official. And every word that the dictionary – not only that dictionary, every dictionary had a flavor of some governmental board, body, or agency. How can we hold that a privately contracted arbitration is a – has any type of flavor of a governmental agency whatsoever? If we were to hold that, then any time anyone decides anything of – is to be resolved by arbitration, and everything now is arbitrable, they try to stay out of court as much as possible. Wouldn't we be opening up this statute to an interpretation which Congress could never have intended? Judge Cowen, in 1964, Congress amended and basically reworded 1782. And when it did so, it deleted the words, in a judicial proceeding pending in any court in a foreign country. That takes out courts. And it replaced, okay, replaced those words with, in a proceeding in a foreign or international tribunal. As the court in Ray Ross Trading said, if what Congress had intended was to limit that to governmental tribunals, it simply could have said, in a proceeding in a foreign or international governmental tribunal. It didn't do that. And if we look at the Intel decision by the U.S. Supreme Court, and the factors that that court outlined, that the U.S. Supreme Court outlined for what is a tribunal when it was making a, when it was trying to decide whether the Competition Bureau for the European Commission was or was not a tribunal under Section 1782, what it said was, is it a first instance decision maker? And does, meaning, are they going to render a decision on the merits of the dispute? And if they are going to do that, is that decision going to be subject to some kind of review by a court? Your argument, it really is circular in this regard. It still gets us back to the question of whether it's a foreign or a tribunal. So it's not answering the question of whether or not this is a tribunal. You're putting the rabbit in the hat. The question is, what is a tribunal? And my question to you is, how can this private arbitration be a tribunal when every dictionary I look at indicates that a tribunal has some governmental nexus of some sort? The court in In re Ras Trading did a similar analysis, Judge Cowen, and it found that the word tribunal, its common usage includes arbitral tribunal. The court in Intel, when it was deciding the question, and admittedly it did not decide the square issue before this court, whether a private international arbitration is a tribunal under 1782, it did, however, in deciding the question that was before it, in that case, cite with approval the article by Hans Smit, which, and in its opinion, in quoting that article, it noted that international, that arbitral tribunals are tribunals for purposes of 1782. Now, again, that's dicta, but nonetheless, that does give us some instruction as to where the Supreme Court was looking when it was trying to answer the question, what is a tribunal? And I think that when you look at that, and when you look at the legislative history and the way it was framed by the Supreme Court, it's an expansive definition, and that includes, there's no reason to believe that it excludes international tribunals of this sort. There's no question, and I think it's conceded by the opposing council, both in their brief and in argument, this is a tribunal. We're talking about an arbitral tribunal. And the common usage of that term does suggest that a private international arbitration is a tribunal. It is a first instance decision maker under the terminology and definition of that phrase used by the Supreme Court in Intel. And there's really no reason for this court to conclude that it is not. And as was pointed out in the questioning to my opponent, every court basically that has looked at this issue, with the exception of the Texas District Court, has agreed. Well, what about NBC and Biederman? Are you saying that those cases are no longer good law? I'm saying that with respect to this issue, those cases are, their holdings were called into question by the analysis of Intel. No, they found an ambiguity. They found an ambiguity. I agree with the court in NRAS trading, which said that, you know, they shouldn't have found an ambiguity because, as that court pointed out, in its opinion, when you look at tribunal, the word tribunal, and you ask yourself whether an arbitral tribunal is a tribunal or not, common usage of that term suggests that it is. And even if you believe that there's an ambiguity, if you look at the way the Supreme Court analyzed the legislative history here, we would have no reason to conclude that it, if it were presented with that issue, would not also conclude that a private international arbitration is a tribunal for purposes of Section 1782. Very briefly, the other two issues presented by the appeal are whether the District Court properly weighed the factors of 1782. The District Court looked at the issue not once but twice, and on each occasion came to the conclusion that the factors, both the three elements of 1782 for granting such a petition and the factors outlined by the court in Intel were met. Well, I have a lot of problems with what the District Court did. You came in with an ex parte order in which your adversary wasn't noticed, and then when your adversary showed up, the District Court treated it as a motion for reconsideration when they had never been there in the first place. And on a motion for reconsideration, exercised an abuse of discretion standard of review. That to me is cockeyed. Am I missing something? Well, Judge Cowen, that is in fact what happened. Under the statute at issue here, Section 1782, there is no requirement that notice be provided to the opposing party when you're seeking an application for the evidence. The opposing party is presented an opportunity to be heard with respect to any objections it might have to the evidence, any privileges it might have, any burdensome or other type of objections under the civil rules, the civil procedure that it might raise. But neither the statute nor any of the cases that we've seen interpreting the statute require notice. And the ex parte applications are common. As a matter of fact, you are right. The statute does not require notice. But I've been in situations with ex parte applications. And as a matter of course, you tell the person making the application, or I get the other guy on the phone, let's have a briefing and bring it in for hearing. At the very least, if there is going to be an ex parte order issued, such as a TRO or something like that, when it comes on for hearing before you, you don't treat it as a motion for reconsideration. You never consider it in the first place. So you're right that it wasn't required, but it would have been, I don't want to criticize what was done here, but it would have been a little bit more judicial if they would have notified the other party that I'm bringing this on for a decision. And the district court then would have exercised its discretion, not on a motion for reconsideration, and taken into consideration the factors that your adversary wanted to bring to the court's attention. Number one, that this was a party to the arbitration, not a third party that you're trying to get discovery from. That the arbitration panel itself had enunciated hostility almost to the arbitration. That they were not exactly tickled silly about the proceeding. And then maybe the district judge would have exercised discretion, pure and simple, without exercising a motion for reconsideration standard of review. And if we were to agree to go forward with this, why wouldn't it be appropriate to remand it back to the district court for it to consider its discretion in the first place? Because we don't exercise discretion in the court of appeals as to taking all the factors into consideration whether this application should have been granted in the first place. I see my time is up, but if I have the time to... As much time as you want. Thank you, Judge. Is that all right? Briefly. There's no reason for this court to conclude that the district court did not take into consideration each of the intel factors. When we submitted our application, we fully briefed each of the intel factors, and the court took those into consideration when it ruled and granted our application. I would point out that the appellant in this case decided to file a motion for reconsideration, might have had other options available to it, but it filed a motion for reconsideration. In that motion for reconsideration, it raised every argument that it is raising before this court as to why the court considered that motion for reconsideration. It took several days, in fact a couple of weeks, in order to consider it and issued an opinion saying I've taken that into account and I disagree. I think my initial ruling was correct. So we have no reason to conclude that the district court in this case didn't take into account each of the factors. And in response to your question, I think that if this case were remanded back, the district court I think already has ruled on the issue of the intel factors and whether our application is granted. It had every argument and piece of evidence that is before this court when it made the ruling, and it ruled in our favor. Okay. All right. Thank you, Mr. Burton. Thank you. Ms. Snow, go ahead. It won't come to the court's surprise that we disagree with the Ra's decision out of Georgia, nor should it come to the court's surprise that we believe that Biedermann and NBC are still good law and believe that this court should follow those decisions. They were correctly decided. Mr. Orders stated that those courts are inconsistent with intel because those courts found an ambiguity in the statute. Both intel and the Second and Fifth Circuit looked to the legislative history. None of those courts just looked at the plain meaning of tribunal. But Justice Scalia said we didn't need to, correct? That's correct. So the majority in intel disagreed with Justice Scalia and did traverse the statute and look to the legislative history. And when you look to the legislative history, it's very clear that tribunal didn't mean just any decision-making body, that it meant some body that was government-flavored. They used the words administrative, quasi-judicial, foreign administrative, quasi-judicial, again, agency. Again, remember the purpose to the amendment and the revamping of Section 19, I'm sorry, 18, I'm going to get the numbers confused now, 1782 in 1964. The idea here was for the United States to be a beacon, to show comedy. You can come over here and use our discovery procedures. There's no foreign discoverability rule. We don't want to offend anybody. But we want to be sort of the poster child for how to do this correctly, that there is free discovery in the United States. And discovery in 1964 wasn't what discovery is today. No, and certainly times have changed. It's now trench warfare. And we did not want that to be imposed on arbitration. But also, when you're trying to be a beacon. Could Congress ever have intended this kind of discovery to be imposed on arbitration? No, we did not. So when Congress was trying to make the United States a beacon and to be, you know, this is the way that others should follow us, we were making an impression on foreign governments, entities that could emulate us. An arbitration panel exists for this one dispute. It's not going to sit again in another dispute. These three arbitrators were chosen from different corners of the world to sit in this dispute. The purposes of comedy and the reasons for enacting the statute in 1964 are not fulfilled by labeling this Tribunal 1 that meets the criteria of 1782. Just a quick couple of points on the mootness issue. Taking Mr. Order's discussion to its logical extension, the case will never be moot. Because at some point there may be some evidence that comes to light. Is there a proceeding today? Your Honor, we think that this proceeding is closed. Is there a proceeding? There is no longer an evidentiary proceeding. Is there a proceeding? No, we think the proceeding for all intents and purposes is behind us. The revision that he's talking about. If it isn't for all intents and purposes behind us, will it be behind you if, in fact, the decision is rendered, before we make a decision? Yes. Yes. Yes, Your Honor, undoubtedly. He can go to the Swiss court. He can go to the Swiss court, which is a purpose to annul the proceeding. It's not the same proceeding. He's asking to annul it and reopen it and re-decide it. So that's why we believe that the case is moot. Okay. I promise to give you back some of my time, sir. That's very nice of you. And what we would like, and Judge Shigaris has suggested, and I think it's a good idea. We work fairly quickly here, but I can't guarantee that a decision is going to be rendered by this court before July 1st, and if the Swiss arbitration, whenever it decides, I'm sure that you'll keep us advised. So if there's some decision, I would ask that the parties make sure that we are made aware of a decision. Through a 28-J letter? Through a 28-J letter. Now, I assume that you'd do that anyways, but I just would like to remind you not to overlook this as 28-J material. Okay. Thank you. Anything else? It's a very interesting case. The matter is very well argued, we thank both parties, and we'll take the matter under advisement.